In the Matter of PAULA T. McDONAGH, Respondent, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, Appellant. (Proceeding No. 1.) In the Matter of HOWARD T. EICHENSTEIN, Respondent, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Appellants. (Proceeding No. 2.)—Mercure, J.

Appeal, in proceeding No. 2, (1) from a judgment of the Supreme Court (Hughes, J.), entered March 4, 1987 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Commissioner of Education denying petitioner's application for a license to practice medicine, and (2) from an order of said court, entered June 8, 1987 in Albany County, which denied respondents' motion for renewal and reargument.

These proceedings are determined together because of their factual similarities and corresponding issues. Petitioners contend that they received bona fide medical degrees from the Universidad Cetec (hereinafter CETEC), located in the City of Santa Domingo, Dominican Republic. CETEC was closed by Dominican authorities in May 1984, subsequent to petitioners' graduations, amid allegations of fraudulent issuance of medical degrees. The Consejo Nacional de Educacion Superior (hereinafter CONES), established by the Dominican government, has been conducting investigations in order to normal-

ize the situation resulting from CETEC's demise and to aid students who are legitimately entitled to their degrees. CONES has been unable to directly verify clinical experiences purportedly obtained by CETEC students in countries other than the Dominican Republic from CETEC's records. Accordingly, petitioners' applications for licenses to practice medicine in New York were denied by respondents as they failed to establish that they had met the requisite educational requirements. Petitioners thereafter commenced proceedings pursuant to CPLR article 78 to obtain judgments declaring the determinations to be arbitrary and capricious and directing issuance of their medical licenses.

Petitioner Paula T. McDonagh received her Bachelor's degree from Fordham University in June 1973 and, several years thereafter, enrolled in a program of medical education at La Escuela de Medicina de la Universidad de Noreste (hereinafter Noreste) in Tampico, Mexico, and remained in residence there for four semesters. During her stay, she learned that American hospitals were discontinuing a form of clinical experience necessary to receive a medical degree from Noreste, meaning that she would either have to work in a Mexican hospital for a year following her four-year medical program at Noreste or transfer to a school that did not have such a requirement. McDonagh enrolled at CETEC in January 1982, commenced clinical rotations at medical institutions in New York and Ohio, allegedly under the auspices of CETEC, and received her degree in June 1983. She subsequently completed a three-year internship and residency program at St. Vincent's Hospital in Richmond County. McDonagh thereafter passed the Federation Licensing Examination (hereinafter FLEX) and obtained her license to practice medicine in Virginia.

Petitioner Howard T. Eichenstein received his Bachelor's degree from City College of the City University of New York in February 1978 and enrolled in Noreste, where he completed seven semesters of medical education, his fifth, sixth and seventh semesters consisting of clinical rotations at New York medical facilities. To avoid spending a fifth year in Mexico, as Noreste required, Eichenstein transferred to CETEC so he could continue his clinical rotations in New York and receive his degree following his eighth semester. He was awarded a medical degree by CETEC in December 1981. Thereafter, he completed a three-year residency program at Booth Memorial Hospital in Queens County, passed the FLEX examination and obtained his license to practice medicine in Florida.

In deciding these proceedings, Supreme Court found that respondents' interpretation of 8 NYCRR 60.1 (a) (2) was irrational and that its refusal to issue licenses to petitioners was arbitrary and capricious. Supreme Court reasoned that respondents arbitrarily determined that if a school did not meet educational requirements at the date of a petitioner's application for a license, they would deny such license and that respondents should have instead examined the school's status as of December 1981 and June 1983, petitioners' respective dates of graduation. We disagree. In our view, Supreme Court erred in failing to consider 8 NYCRR 60.2, and the judgments annulling the Commissioner's determinations and directing issuance of medical licenses to petitioners must accordingly be reversed.

The Department of Education denied petitioners their medical licenses based on its determinations that petitioners did not complete their medical education at a school which met its requirements, did not complete a program of 32 months of medical education offered as an integral part of the program of medical education at the medical school, and did not submit acceptable documentation of medical education. A refusal to grant a medical license will be overturned as arbitrary and capricious if the Department has misinterpreted a statute or regulation or misread the record (*Matter of Schwarz v New York State Educ. Dept.*, 88 AD2d 1082, 1083-1084). On the other hand, the Department will be upheld if its determination to refuse a medical license has a rational basis (*Matter of Lock v New York State Educ. Dept.*, 102 AD2d 979, 980, *lv denied* 64 NY2d 604).

Respondents' claim that petitioners must submit proof of the involvement of CETEC in the formulation, administration, supervision and evaluation of the purported clinical portion of their educational programs finds support in 8 NYCRR 60.2, which provides, in part, "*Clinical clerkship* as used in this Part shall mean a supervised educational experience which is part of the clinical component of a program of undergraduate medical education" (emphasis in original). The record is devoid of any proof that the clinical rotations were a part of a curriculum and of a program of medical education as required by the regulation. Petitioners have not submitted acceptable documentation that the clinical rotations were performed under the aegis of CETEC. The unambiguous words "a medical program" have reasonably been interpreted by the Department as meaning an integrated program, and not an accumulation of rotations arranged by petitioners or others. The

Department's interpretation of the governing statute (Education Law § 6524), its regulations and the records before it is rational since CONES failed to verify CETEC's involvement in petitioners' clinical rotations *(see, Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213, 221; *Matter of Johnson v Joy,* 48 NY2d 689, 691; *Matter of Howard v Wyman,* 28 NY2d 434, 438). The determinations at issue herein, requiring the exercise of agency discretion, should therefore be upheld *(see, Matter of Smith v University of State of N. Y.,* 49 AD2d 969, 970; *Matter of Tomanio v Board of Regents,* 43 AD2d 643, 644, *affd* 38 NY2d 724).

Petitioners have not established a clear legal right to receive their medical licenses and, accordingly, are not entitled to compel issuance of such licenses through an article 78 proceeding in the nature of mandamus *(see, Klostermann v Cuomo,* 61 NY2d 525, 539; *Matter of Legal Aid Socy. v Scheinman,* 53 NY2d 12, 16; *Matter of Peasley v Flacke,* 98 AD2d 915, 916).

Judgments reversed, on the law, without costs, determinations confirmed and petitions dismissed.

Appeals from orders dismissed, as academic, without costs. Mahoney, P. J., Kane, Casey, Weiss and Mercure, JJ., concur.